```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Tonya L. Swanson,                    :

    Plaintiff,                   :

  v.                                 :        Case No. 2:11-cv-1100

                                       :        JUDGE ALGENON L. MARBLEY
Commissioner of Social Security,              Magistrate Judge Kemp

    Defendant.                  :

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Tonya L. Swanson, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for supplemental security income. That application was filed on April 29, 2008 and alleged that plaintiff became disabled on April 1, 2008.

After initial administrative denials of her application, plaintiff was given a hearing before an Administrative Law Judge on October 28, 2010. In a decision dated December 10, 2010, the ALJ denied benefits. That became the Commissioner's final decision on October 25, 2011, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on February 14, 2012. Plaintiff filed her statement of specific errors on March 15, 2012. The Commissioner filed a response on May 10, 2012. No reply brief was filed, and the case is now ready to decide.

### II. The Lay Testimony at the Administrative Hearing

Plaintiff's testimony at the administrative hearing is found at pages 10 through 29 of the record. Plaintiff, who was 44 years old at the time of the hearing and attended school through the ninth grade (at times in special education classes),

testified as follows.

Plaintiff has never worked.  She testified she has never been able to work because of her physical condition.  She had one job in 2000, working as a housekeeper for a nursing home, but was fired after a week.  She believed her most limiting conditions were depression and problems with her feet, back and arms.  Some of her problems are caused by diabetes.

Plaintiff never suffered a back injury, but has pain in her lower back.  She became depressed after her father died, which happened when she was twelve.  She still takes medication for depression and anxiety, and had been seeing a counselor once a month prior to having some surgery.  Even with medication, she testified that she has four bad days a week when she is upset and crying.

From a physical standpoint, plaintiff cannot stand for long periods of time due to pain in her legs.  She can sit for longer periods, but would have trouble with any job requiring reading.  She also has difficulty getting along with people.  She is able to shop for groceries and handle money.  She cleans her own house.  She has no friends to socialize with and no transportation, but would visit her mother if she could.  On a daily basis she generally listens to the radio.

### III.  The Medical Records

The medical records in this case are found beginning on page 233 of the administrative record.  The pertinent records can be summarized as follows.

The first exhibit in the file, Exhibit 1F, is an assessment of mental capacity done for the Ohio Department of Job and Family Services by Dr. Paugh, plaintiff's treating psychologist.  It appears to have been completed some time in 2007.  Dr. Paugh concluded that plaintiff was unemployable. Part of the form records his observations, including the fact that she was tearful

throughout the interview.  The form also indicates that obesity and diabetes were likely to be significant impairments, and that plaintiff had a marked limitation in her ability to complete a workday or workweek or to get along with others.  (Tr. 233-37).  Dr. Paugh completed a similar form which appears as part of Exhibit 3F (Exhibit 2F is a large collection of office notes, most of which contain little information about plaintiff's conditions, symptoms or limitations), and which indicates a similar set of limitations.  (Tr. 289).  Several years later, in 2010, he again assessed her functional capacity as including a number of marked limitations.  (Tr. 368-70).  The narrative support for this evaluation is also similar.

Plaintiff was evaluated by Dr. Donaldson, a consultative examiner, on June 25, 2008.  He noted that she was agitated and intimidated by the process, but was cooperative in the evaluation.  She did relax as the interview progressed.  She reported difficulty sleeping and daily crying spells.  She also described frequent mood swings and diminished interest in activities.  Dr. Donaldson diagnosed a depressive disorder and an anxiety disorder as well as a panic disorder without agoraphobia, and rated plaintiff's GAF at 50-55.  The only psychological limitations he noted were a moderate impairment in the ability to attend to relevant stimuli, to relate to others, and to withstand the stress and pressure of regular work activity.  He appears to have taken her report of chronic pain into account in making his assessment.  (Tr. 292-95).

The next assessment was done by Dr. Pawlarczyk, a state agency reviewer (Exhibit 5F).  He completed a form which, because it is the subject of one of plaintiff's two assignments of error, will be described in some detail.

The form is a standard one used by the Social Security Administration.  Part I is entitled "Summary Conclusions," and

asks the reviewer to evaluate a number of different mental activities which a claimant can sustain over a workday or workweek, rating their severity from "Not Significantly Limited" to "Markedly Limited" (there are also options to indicate that there is either no evidence of such limitations or that they cannot be rated on the basis of the available evidence).  The instructions also tell the reviewer to provide a "[d]etailed explanation of the degree of limitation for each category" in Section III of the form, which is entitled "Functional Capacity Assessment."

    In the first section, Dr. Pawlarczyk noted the following moderate limitations in eight work-related activities: understanding and remembering detailed instructions, carrying out detailed instructions, performing activities on a regular schedule and being punctual, completing a workday and work week without interruptions from psychologically-based symptoms, interacting appropriately with the general public, accepting criticism or instructions from supervisors, getting along with co-workers, and responding appropriately to changes in the work setting.  He then completed Section III, the Functional Capacity Assessment, in narrative form, noting first that plaintiff's statements about her psychological problems "appear credible in nature, not in limitation."  He summarized the results of Dr. Donaldson's evaluation and gave "weight" to his opinions, repeating the limitations reported by Dr. Donaldson.  He then concluded that "[t]he clmt would likely work best performing simple, repetitive tasks in a static environment with less frequent interaction with others."  On another form, he indicated that the disorders he evaluated included an affective disorder, borderline intellectual functioning, and an anxiety and panic disorder.  Using the "B" criteria of the Listing of Impairment, he also rated plaintiff's degree of limitation in four areas,

-4-

finding moderate limitations in the areas of maintaining social functioning and maintaining concentration, persistence and pace. (Tr. 297-314). Dr. Swain, another state agency reviewer, affirmed this assessment. (Tr. 337).

Dr. Neiger, a state agency physician reviewer, completed an assessment form relating to plaintiff's physical condition. She described the conditions she took into account as diabetes, obesity, heel spurs, and plantar fasciitis. Generally, she found that plaintiff could do medium work, but could never climb ladders, ropes or scaffolds. (Tr. 338-45). That evaluation conflicts with one done by plaintiff's treating physician, Dr. Russell, who limited plaintiff to a total of seven hours of standing, walking and sitting in a work day. Dr. Russell also said that plaintiff's emotional stress was likely the most limiting condition from which she suffered. (Tr. 364-65).

The remainder of the medical records are notes of treatment and some hospital records. None of them appear to contain any information which was significant to the ALJ's decision, or which is relied on by the parties in their memoranda.

### IV. The Vocational Testimony

Mr. Brown, a vocational expert, also testified at the administrative hearing. His testimony begins at page 30 of the administrative record. He agreed that plaintiff had no relevant past work history.

Mr. Brown was asked some questions about a hypothetical person who was 44 years old and had plaintiff's education and work experience. Additionally, that person had the physical and mental work abilities reflected in Exhibits 5F and 10F, which are the evaluations done by the state agency reviewers. Mr. Brown testified that such a person could do a at least half of all medium unskilled jobs, including jobs such as kitchen attendant or office cleaner. He based his testimony on the assumption that

the person could do simple, repetitive tasks in a static environment and could interact with others on a less than frequent basis. However, if the person were as limited as Dr. Paugh stated in his reports, that person could not work due to the number and type of marked restrictions he noted. The same would be true if the person were limited to less than sedentary work, but if the limitation were simply to sedentary work, along with the mental restrictions discussed earlier in his testimony, Mr. Brown stated that such a person could do half of the unskilled sedentary jobs in the region, or approximately 2,500 jobs. Finally, a person who was off task for 20 to 25 percent of the workday could not work competitively.

V. <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 41 through 54 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff has never met the insured requirements of the Social Security Act for purposes of disability benefits. Next, he found that plaintiff had not engaged in substantial gainful activity from her alleged onset date of April 1, 2008 through the date of the decision. As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including insulin-dependent diabetes mellitus with retinopathy, degenerative disc disease of the cervical spine, obesity, depressive disorder, anxiety disorder, and borderline intellectual functioning. The ALJ also found that these impairments did not meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional

capacity to perform a limited range of work at the medium exertional level, but that she could never climb ladders, ropes or scaffolds.  Also, she had nonexertional limitations which restricted her to the performance of simple, repetitive tasks in a static work environment with infrequent interaction with others.  The ALJ accepted the vocational expert's testimony that someone with such limitations could perform approximately 20,000 unskilled medium jobs in the regional economy.  As a result, the ALJ concluded that plaintiff had not demonstrated an entitlement to benefits.

VI.  Plaintiff's Statement of Specific Errors

In her statement of specific errors, plaintiff raises the following issues.  First, plaintiff argues that the ALJ based his findings on incomplete answers to a hypothetical question; specifically, on testimony from the vocational expert which did not take into account a number of moderate psychological limitations, based on the expert's statement that he did not know what "moderate" meant.  Second, plaintiff argues that the ALJ improperly discounted the opinions of her treating physicians and improperly credited the opinions of the state agency reviewers. The Court generally reviews the administrative decision of a Social Security ALJ under this legal standard:

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based

upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

    Plaintiff's first assignment of error assumes the accuracy of Dr. Pawlarczyk's opinion, but takes issue with the way in which either the ALJ or the vocational expert interpreted it.  As plaintiff notes, that opinion including findings that plaintiff had a number of moderate limitations in her ability to perform work-related activities, including, among others, the ability to complete a normal workday and work week without interruption from psychologically-based symptoms.  Plaintiff argues that the short narrative description provided elsewhere in Dr. Pawlarczyk's report, and which was incorporated into the hypothetical question asked of Mr. Brown, did not accurately capture all of these limitations.  When her counsel asked Mr. Brown if someone who was off task 20-25% of the time could work, Mr. Brown said that she could not.  Based on this answer, plaintiff contends that had these moderate limitations been correctly incorporated into the question posed by the ALJ, Mr. Brown's response about available jobs would have been different, so that it was error for the ALJ to have relied on Mr. Brown's testimony in finding that plaintiff

was not disabled.  As primary support for this argument, plaintiff relies on the decision in Ealy v. Comm'r of Social Security, 594 F.3d 504 (6th Cir. 2010).

Ealy was a case in which the ALJ adopted the opinion of a state agency reviewer who concluded, on Section I of the evaluation form, that the claimant was moderately limited in eight work-related categories (the same number as in this case), most of which are the same limitations which Dr. Pawlarczyk found.  In Section III, the reviewer noted that the claimant could understand and remember simple instructions, do simple repetitive tasks in two-hour segments as long as pace was not of critical importance, work in a non-public setting, and adapt to routine changes in the workplace.  The ALJ translated this information into a hypothetical question which asked the vocational expert to assume that the claimant was limited to the performance of simple repetitive tasks and instructions in a non-public work setting.  On appeal, the claimant contended that the question did not accurately incorporate all of the limitations which appeared in the state agency reviewer's report.

The Court of Appeals found merit in this argument.  The decision noted that the "streamlined" hypothetical question made no mention of the fact that, according to the reviewer's comments in Section III of the form, the claimant could only work in two-hour segments and that speed and pace could not be critical job requirements.  Because of this discrepancy between the functional capacity outlined by the reviewer and the question posed to the vocational expert, the Court of Appeals held that a remand was required.

This case differs from Ealy in one very important respect. In both cases, it was the functional capacity rating in Section III of the report which the ALJ credited as accurately describing the claimant's psychological limitations.  However, in Ealy, the

-9-

ALJ simply failed to incorporate important parts of that functional capacity rating into the hypothetical question posed to the vocational expert.  Here, by contrast, Dr. Pawlarczyk explicitly set forth, in narrative form, exactly how he believed that the moderate impairments he noted in Section I of the form impacted plaintiff's ability to work.  The ALJ and the vocational expert adopted that statement of functional capacity in its entirety.  Thus, there was no discrepancy between the reviewer's findings in Section III and the hypothetical question posed to Mr. Brown, and this difference distinguishes this case from Ealy.

Because the facts differ between the two cases, plaintiff's argument here is actually quite different from the one made in Ealy.  Essentially, plaintiff contends that Dr. Pawlarczyk himself did not correctly translate his findings from Section I of his report into the conclusions he drew in Section III.  But there is no support for that argument.  Presumably, Dr. Pawlarczyk was well aware of his findings that plaintiff had moderate limitations in various areas, including dealing with the normal stress of everyday work.  He apparently accommodated that restriction by limiting plaintiff to a "static" work environment and to simple repetitive tasks.  He did not, as did the reviewer in Ealy, make any comments about the need to segment the work day or to perform tasks where pace or speed were not critical.  It can hardly be error for the ALJ to accept the state agency reviewer's conclusions as to functional capacity just as that reviewer stated them, nor would it have been appropriate for the ALJ to second-guess what amounts to a medical judgment in that area.  Because no Ealy-type error occurred here, plaintiff's first assignment of error provides no basis for a remand.

Next, plaintiff argues that the ALJ did not have adequate reasons for accepting the opinions of the state agency reviewers as opposed to the opinions of her treating psychologist and

-10-

physician.  As noted above, both Dr. Paugh and Dr. Russell described limitations which, if accepted, would preclude work either from a physical or psychological standpoint.  Citing to well-established case law and regulations (see, e.g., Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985) and 20 C.F.R. §404.1527(d)) which mandate that, absent good reasons to the contrary, the opinions of treating sources must be afforded either controlling or significant weight, plaintiff argues that the ALJ erred by relying on the alleged absence of treatment notes as a basis for discounting the opinions of the treating sources.  More specifically, she contends that the record contains a large number of treatment notes from both Dr. Paugh and Dr. Russell (and, of course, none from the state agency reviewers), and that the ALJ incorrectly cited the scarcity of treatment notes as support for his decision to give greater weight to the views expressed by Dr. Pawlarczyk and Dr. Neiger.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(d); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the

-11-

weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

    Here, as the Commissioner correctly notes, the fact that the record contains a large number of documents which were generated by plaintiff's visits to Dr. Paugh or Dr. Russell does not necessarily mean that there is any information in those notes which explains why either treating source viewed plaintiff as disabled.  Here is how the ALJ discussed and resolved this issue.

    The three physical conditions which the ALJ recognized (and plaintiff, in her statement of errors, does not argue for any additional conditions) were diabetes, cervical disc disease, and obesity.  According to the ALJ, the first condition was often described as "controlled" and was being effectively treated by oral medication and insulin.  Her retinopathy had developed only recently, and there was no evidence.  Plaintiff's cervical spinal condition was described in 2010 as moderate, and only mild tenderness was noted on examination.  She had not undergone any treatment for this condition before that date.  Lastly, there was no evidence that her obesity (her highest recorded weight seems to have been 294 pounds; she is 5'4" tall) "caused significant difficulty with mobility or serious complications involving other body systems."  (Tr. 49).  The ALJ noted that Dr. Russell had imposed relatively severe restrictions on plaintiff's ability to do many physical activities, but stated that none of the treatment records supported these limitations.  The ALJ concluded that such restrictions either came from plaintiff's own self-reported symptoms, without medical evidence to back them up, or

had no support at all in the medical records - that is, there were simply no physical conditions identified which would account for such severe restrictions.

The Court agrees with the Commissioner that the ALJ used a valid basis for discounting the opinion of a treating physician. In fact, the presence or absence of medical evidence is one of the criteria which 20 C.F.R. §404.1527(d) requires an ALJ to consider. That regulation states, in part, that "we consider [whether] a treating source's opinion ... is well-supported by medically acceptable clinical and laboratory diagnostic techniques ...." See also Walters v. Comm'r of Social Security, 127 F.3d 525 (6th Cir. 1997). Because this is an acceptable reason for discounting a treating physician's opinion, and because plaintiff, despite her reference to numerous medical records generated by her visits to Dr. Russell, has not actually identified a single record which describes either conditions or test results supporting restrictions that would make her unable to do even sedentary work, the Court sees no error in the way in which the ALJ evaluated the evidence concerning her physical impairments.

With respect to plaintiff's psychological impairments, the ALJ provided this rationale for giving little weight to Dr. Paugh's opinions. He noted that although Dr. Paugh did express opinions, "there are no outpatient treatment records submitted." (Tr. 51). Thus, the ALJ found that although plaintiff had various psychological conditions - which Dr. Donaldson, the consultative examiner, had also diagnosed - the evidence about those impairments was "limited." (Tr. 51). However, one opinion - that of Dr. Donaldson - was actually supported by medical findings, and the ALJ gave that opinion significant weight. The ALJ also noted that there had been a three-month gap in treatment with Dr. Paugh, during which plaintiff did not report a need for

treatment, and that there was a significant difference between Dr. Paugh's various evaluations and those of all of the other mental health professionals who expressed opinions about the degree of limitation which plaintiff was experiencing.  The ALJ also explicitly took into account plaintiff's activities of daily living.  Again, these reasons for discounting Dr. Paugh's opinions are facially valid, and, again, plaintiff's statement of errors fails to identify a single treatment note which contains any evidence supporting Dr. Paugh's opinions.  Given this lack of documentation, and given the ALJ's role in resolving conflicts in the medical evidence, see, e.g., Burton v. Halter, 246 F.3d 762 (6th Cir. 2001), the Court concludes that the ALJ was permitted to assign little weight to Dr. Paugh's opinions and to credit the findings of Dr. Donaldson and the state agency reviewers.  Thus, there is no merit in plaintiff's second assignment of error.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings

or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge